**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEBRASKA**

| | |
|---|---|
| THE ANDERSONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMAZING GRAINS FARM; AMAZING GRAINS FAMILY FARMS; THEDE TRUCKING, LLC; THEDE FARMS; THEDE POWER & EQUIPMENT, LLC; U-BETCHA AUTO ST PAUL, LLC; JST, INC.; MST, INC.; CORDING CATTLE CO.; JLT AGRI LLC; MST AGRI LLC; DEAN G. THEDE, *individually and in his capacity as trustee of the Dean G. Thede Revocable Trust*; JANET E. THEDE, *individually and in her capacity as trustee of the Janet E. Thede Revocable Trust*; MICHAEL THEDE; and JEAN THEDE. <br><br> Defendants. | Case No. _____ <br><br> **JURY TRIAL DEMANDED** <br><br> **LINCOLN COURTHOUSE** |

## COMPLAINT FOR DAMAGES

Plaintiff, The Andersons, Inc. ("The Andersons"), for its Complaint against the Defendants, Amazing Grains Farm ("Amazing Grains"), Amazing Grains Family Farm, Thede Trucking, LLC ("Thede Trucking"), Thede Farms, Thede Power and Equipment, LLC ("Thede Power & Equipment"), U-Betcha Auto St. Paul, LLC ("U-Betcha"), JST, Inc. ("JST"), MST, Inc. ("MST"), Cording Cattle Co. ("Cording Cattle"), JLT Agri LLC ("JLT Agri"), MST Agri LLC ("MST Agri"), Dean G. Thede, individually and in his capacity as trustee of the Dean G. Thede Revocable Trust ("Dean Thede"), Janet E. Thede, individually and in her capacity as trustee of the Janet E. Thede Revocable Trust ("Janet Thede"), Michael Thede, and Jean Thede. Collectively, the Defendants other than Amazing Grains will herein be referred to as the "Related Parties."

1

## THE PARTIES

1.    Plaintiff The Andersons, Inc. is a corporation organized and existing under the laws of Ohio, with its principal place of business in Maumee, Ohio.

2.    Defendant Amazing Grains is a Nebraska partnership engaged in the business of farming and marketing grain with an address of 327 R Road, Palmer, Nebraska, 68894.

3.    Amazing Grains has two partners, JLT Agri and MST Agri.

4.    Defendant JLT Agri is a limited liability company organized and existing under the laws of Nebraska, with its principal place of business at 327 R Road, Palmer, Nebraska 68894. Upon information and belief, none of the members of JLT Agri are citizens of Ohio.

5.    Defendant MST Agri is a limited liability company organized and existing under the laws of Nebraska, with its principal place of business at 327 R Road, Palmer, Nebraska 68894. Upon information and belief, none of the members of MST Agri are citizens of Ohio.

6.    Defendant Amazing Grains Family Farms is a Nebraska partnership engaged in the business of farming and marketing grain with an address of 327 R Road, Palmer, Nebraska, 68894. Upon information and belief, none of the partners of Amazing Grains Family Farms are citizens of Ohio.

7.    Defendant Thede Trucking is a limited liability company organized and existing under the laws of Nebraska, with its principal place of business at 327 R Road, Palmer, Nebraska 68894. Upon information and belief, none of the members of Thede Trucking are citizens of Ohio.

8.    On information and belief, Defendant Thede Farms is a Nebraska partnership engaged in the business of farming, with its principal place of business at 327 R Road, Palmer, Nebraska 68864. Upon information and belief, none of the partners of Thede Farms are citizens of Ohio.

9.      Defendant Thede Power and Equipment is a limited liability company organized and existing under the laws of Nebraska, with its principal place of business at 327 R Road, Palmer, Nebraska 68894. Upon information and belief, none of the members of Thede Power & Equipment are citizens of Ohio.

10.     Defendant U-Betcha is a limited liability company organized and existing under the laws of the state of Nebraska, with its designated office address located at 327 R Road, Palmer, Nebraska. Upon information and belief, none of the members of U-Betcha are citizens of Ohio.

11.     Defendant JST is a corporation organized and existing under the laws of Nebraska, with its principal place of business at 327 R Road, Palmer, Nebraska 68894.

12.     Defendant MST is a corporation organized and existing under the laws of Nebraska, with its principal place of business at 327 R Road, Palmer, Nebraska 68894.

13.     Defendant Cording Cattle is a corporation organized and existing under the laws of Nebraska, with its principal place of business at 292 Cushing Road, St. Paul, Nebraska.

14.     Defendant Dean Thede is a citizen of Nebraska, residing at 292 Cushing Road, St. Paul, Nebraska.

15.     Defendant Janet Thede is a citizen of Nebraska, residing at 292 Cushing Road, St. Paul, Nebraska.

16.     Defendant Michael Thede is a citizen of Nebraska, residing at 327 R Road, Palmer, Nebraska 68894. Michael Thede's parents are Dean Thede and Janet Thede.

17.     Defendant Jean Thede is a citizen of Nebraska, residing at 327 R Road, Palmer, Nebraska 68894.

## JURISDICTION AND VENUE

18.     The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332 because Plaintiff is completely diverse from all Defendants and the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

19.     Venue is properly laid in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District, and all defendants are residents of the State of Nebraska and this District.

## NATURE OF THIS ACTION

20.     The Andersons, a creditor, brings this action to void Amazing Grains' improper and fraudulent transfers of assets (the "Transferred Assets") to a number of Related Parties (the "Transfers").

21.     The Andersons seeks a determination that the Transfers are void pursuant to the Nebraska Uniform Voidable Transactions Act ("NUVTA"), Neb. Rev. Stat. §§ 36-801 to 36-815.

22.     The Andersons further seeks: the avoidance of the Transfers as permitted by Neb. Rev. Stat. § 36-808(a)(1); attachment of the Transferred Assets as permitted by Neb. Rev. Stat. § 36-808(a)(2); and injunctive relief prohibiting Amazing Grains and the Related Parties from further dispositions or transfers of the Transferred Assets or other property as permitted by Neb. Rev. Stat. § 36-808(a)(3)(i).

23.     The Andersons also seeks damages pursuant to the equitable doctrine of unjust enrichment or, in the alternative, the imposition of a constructive trust held for the benefit of The Andersons on the Transferred Assets.

24.     Finally, The Andersons seeks a determination that Dean Thede, Janet Thede, Michael Thede, and Jean Thede are personally liable for the actions of Amazing Grains, JLT Agri, and MST Agri pursuant to the Alter Ego Doctrine or the Piercing the Corporate Veil Doctrine.

## FACTUAL ALLEGATIONS

### *The Underlying Debt*

25.     In June 2018, Amazing Grains signed a Customer Flex Agreement (the "Flex Agreement") with The Andersons that governed the relationship between the parties. Michael Thede personally signed the Flex Agreement on behalf of Amazing Grains and listed his title as "Partner."

26.     According to the terms of the Flex Agreement, Amazing Grains and The Andersons' relationship would be governed by and subject to the National Grain and Feed Association ("NGFA") Grain Trade Rules, and any disputes would be resolved through arbitration before the NGFA.

27.     Pursuant to the terms of the Flex Agreement, Amazing Grains agreed and warranted that all of its contracts with The Andersons—including the contracts at issue here—were "cash contracts for the delivery of agricultural products."

28.     In the Flex Agreement, Amazing Grains further warranted that it was not "enter[ing] into Contracts [with The Andersons] for speculative purposes."

29.     Through the Flex Agreement, Amazing Grains acknowledged that it had an obligation to fully perform the contracts, and that The Andersons had no duty to limit the size or nature of its market positions.

30.     Amazing Grains never objected to the terms of the Flex Agreement, and it remains in effect.

31.    Beginning in 2018, Amazing Grains and The Andersons entered 22 contracts for the sale and delivery of corn, totaling 3,000,000 bushels.

32.    Amazing Grains' contracts took the form of hedge-to-arrive contracts whereby Amazing Grains committed to sell grain for delivery during a specific period in the future, at a price derived from the price of a futures contract corresponding to that future delivery period.

33.    The Andersons sent a confirmation of each trade to Amazing Grains and Amazing Grains signed and returned each confirmation demonstrating its intention to be bound.

34.    Each confirmation included The Andersons' standard terms and conditions page, and Amazing Grains never objected to the terms and conditions set forth on any of the confirmations sent to it.

35.    Each of the Contracts contained a pricing mechanism that permitted Amazing Grains to lock and unlock the contract price from the corresponding futures price.

36.    Initially, Amazing Grains' use of the pricing mechanism generated modestly higher contract prices compared to market prices, but by October 2020, the contract prices on Amazing Grains' Contracts had declined, amounting to a total difference of over $750,000 compared to the market prices. Over the next calendar year, the contract prices on Amazing Grains' Contracts continued to fall relative to the market price as it continued to roll its contracts forward.

37.    In October 2021, Amazing Grains sought to continue using the Contracts' pricing mechanism, but The Andersons refused, citing the significant difference between the contract price and the market price caused by Amazing Grains' use of the pricing mechanism.

38.    Instead, The Andersons requested that Amazing Grains commit to a plan to deliver grain on its contracts and committed to permit extensions of the delivery period to facilitate deliveries on the Contracts.

39.   Amazing Grains, however, refused to commit to a plan to deliver grain on the Contracts.

40.   Instead, knowing that Amazing Grains' use of the pricing mechanism had caused the contract price to decline significantly compared to the market price, in or around October 2021, Amazing Grains made the decision to not perform the Contracts.

41.   Amazing Grains knew this decision would result in The Andersons asserting a breach of contract against it, and thereafter, it began transferring its assets to third parties to frustrate The Andersons' future attempts at collection. The precise identities of these third parties are in the possession of the Defendants, but on information and belief grounded on the facts that each Defendant entity is owned by the Defendant individuals, the Defendant entities share one of two registered business addresses, the registered business addresses correspond to the residential addresses of the Defendant individuals, and that Amazing Grains and the Related Parties continue to farm today, they are one or more of the Related Parties.

42.   Amazing Grains' failure to commit to a plan to deliver grain on the Contracts gave The Andersons reasonable grounds to feel insecure, and on March 25, 2022, The Andersons sent a written request for assurances that Amazing Grains intended to perform its 22 open contracts.

43.   On the evening of March 25, 2022, personnel from The Andersons and Michael Thede had a telephone call, and Michael Thede requested additional time to check Amazing Grains' corn inventory and to put together a delivery schedule.

44.   Michael Thede and personnel from The Andersons continued to communicate about Amazing Grains' need for additional time to check its corn inventories and to create a delivery schedule. On March 30, 2022, The Andersons ultimately agreed to extend the deadline

for Amazing Grains to provide assurances that it intended to perform until it was able to gather inventory information and prepare a delivery schedule.

45.     After March 30, 2022, The Andersons received no further communications from Amazing Grains, and on April 18, 2022, The Andersons sent a second written demand for assurances to Amazing Grains requesting that it provide assurances that it intended to perform its 22 open contracts by April 25, 2022.

46.     Amazing Grains failed to provide the requested assurances by the April 25, 2022 deadline and confirmed it would not provide the requested assurances in an April 26, 2022 telephone call.

47.     Because Amazing Grains refused to provide the requested assurances, The Andersons then cancelled all 22 open contracts, priced at the close of the market on April 26, 2022, as permitted by the NGFA Grain Trade Rules.

48.     On April 27, 2022, The Andersons issued Amazing Grains an invoice in the amount of $15,607,000, which represents the difference between the contract prices and the market price at the time of cancellation.

49.     Amazing Grains has, to date, refused to pay The Andersons any of the invoiced amount.

50.     On July 12, 2022, The Andersons filed a request to initiate arbitration proceedings before the NGFA to secure a decision confirming that Amazing Grains is obligated to pay The Andersons the entire sum owed, plus its costs and attorneys' fees as permitted by the Contracts.

### *Amazing Grains' Financial Position*

51.     Prior to initiating arbitration, The Andersons received copies of consolidated Income Statements and consolidated Balance Sheets for Thede Trucking, Thede Power &

Equipment, Amazing Grains Family Farm, Amazing Grains, JST, Inc. MST, Inc, Dean & Janet Thede, and Cording Cattle for the years 2015-2018.

52.     These financial statements show substantial connections between the entities, including inter-company rental payments of $504,624.13 in 2015, $839,082.25 in 2016, $540,484.86 in 2017, and $540,485.00 in 2018; and inter-company notes receivable of $948,752.00 in 2015, $1,005,815.00 in 2016, $967,909.64 in 2017, $176,566.62 in 2018.

53.     These consolidated financial statements also show the payment of family expenses and taxes out of the Thede Farms Partnership's income of $151,946.00 in 2015, $186,974.54 in 2016, $95,760.56 in 2017, and $139,500.00 in 2018.

54.     After initiating arbitration, The Andersons received copies of Income Statements and Balance Sheets for Amazing Grains for the years 2018 through 2022, and its two partners MST Agri and JLT Agri for the years 2019–2022.

55.     Amazing Grains' financial statements show material connections between it and other Related Parties. In 2019, Amazing Grains was purportedly owed a total of over $3 million by Thede Farms, Amazing Grains Family Farms, Thede Power and Equipment and Cording Cattle, and Amazing Grains purportedly owed Amazing Grains Family Farm and Dean and Janet Thede a total of over $500,000. In 2020, Amazing Grains was owed a total of over $4.9 million by Thede Farms, Amazing Grains Family Farms, Thede Power and Equipment, and U-Betcha Auto and owed Dean and Janet Thede and Cording Cattle a total of over $3.25 million.

56.     In 2021 and 2022, Amazing Grains financial statements no longer report which Related Entity is indebted to it but instead purportedly report an aggregate "Other Assets – Due From/(To)" figure of $4.6 million in 2021 and only $732,974 in 2022. On information and belief, Amazing Grains was owed these sums by one or more Related Parties.

57.     In 2021 and 2022, Amazing Grains' financial statements continued to report the specific Related Parties to which it was purportedly indebted. In 2021, Amazing Grains purportedly owed Dean Thede and Janet Thede collectively $2.3 million. In 2022, Amazing Grains' financial statements reflect it owing Dean Thede and Janet Thede collectively $1.2 million.

58.     Amazing Grains' financial statements also show that its farming operation was often profitable, generating after-tax net income of $370,659 in 2018, $511,596 in 2019, $547,162 in 2021, and $354,839 in 2022.

59.     Between 2018 and 2022, the only year Amazing Grains lost money from its farming operations was in 2020, where Amazing Grains' operations generated negative after-tax net income of $490,867. Amazing Grains' 2020 losses were partially offset by a positive extraordinary item, reducing Amazing Grains' final net loss to $257,875.

60.     Amazing Grains' financial statements indicate that its after-tax net income in 2019-2021 included financing expenses.

61.     These financing expenses specifically include a line item for "Gain/(Loss) on Hedge Activity" that amounted to a $31,225 gain in 2019, a $55,000 gain in 2020, and a $272,054 loss in 2021.

62.     In 2022, Amazing Grains' financial statements continued to indicate that its after-tax net income includes a financing expense line item labeled "Gain/(Loss)" that amounted to a $6,275 gain in 2022, but no longer correlates that line item to hedging activities.

### *Amazing Grains' Insolvency*

63.     Confusingly, Amazing Grains' financial statements show that despite its significant after-tax net income in 2021 and 2022, it lost vast sums of money in both of those years— purportedly losing $1,386,941 in 2021 and losing $3,542,052 in 2022.

10

64.     Amazing Grains' financial statements show that its losses in 2021 and 2022 were so substantial that it became insolvent, with its liabilities exceeding its assets by $1,837,085 at the end of 2021 and $5,471,883 in 2022.

65.     Despite its insolvency, Amazing Grains' financial statements, as well as those of MST Agri and JLT Agri, suggest Amazing Grains paid a $46,025.50 distribution to each of its partners, MST Agri and JLT Agri, in 2021 and a $42,500.00 distribution to each of its partners in 2022.

66.     While the pending arbitration before the NGFA does not allow for discovery, The Andersons have sought to understand how Amazing Grains had become insolvent after profitable years, but Amazing Grains refused to provide additional information. Based on a review of Amazing Grains' financial statements, the reason for its unprofitability and ultimate insolvency appears to have been two "extraordinary items" listed on its 2021 and 2022 financial statements.

67.     Amazing Grains' financial statements disclose only the value of the two extraordinary items and lack the customary detail and explanatory notes that would explain the true nature and beneficiaries of the two transfers. The additional details relating to each of the two extraordinary items is uniquely in the hands of Amazing Grains and the other Defendants.

68.     On information and belief, each of these extraordinary items corresponds to a transfer to a Related Entity and were made to intentionally frustrate The Andersons' attempts at collection while facilitating Amazing Grains' continued operations. A review of U.C.C. financing statements confirms that Amazing Grains, Michael Thede, and Jean Thede secured financing for the 2023 crop year from Agrifund, LLC.

*The First Transfer(s)*

69.     For the year 2021, Amazing Grains' financial statements contain reference to "an extraordinary item" and record a loss of $2,062,500.00 (the "First Transfer(s)"). Given the information The Andersons have learned to date, it appears that this loss resulted from a transfer or transfers to one or more Defendants during the year 2021.

70.     The loss recorded as an extraordinary item rendered Amazing Grains insolvent, causing Amazing Grains' debts to exceed its assets.

71.     Amazing Grains refuses to disclose the true nature of the First Transfer(s), and it does not appear to be explained by Amazing Grains' ordinary business operations.

72.     As a result of the First Transfer(s), and in combination with a modest net operating profit in 2021, Amazing Grains' capital stock fell from a positive $605,529 in 2020 to a negative $1,837,085 in 2021.

73.     Amazing Grains' financial statements lack sufficient detail to definitively establish when the First Transfer(s) occurred. However, Amazing Grains' financial statements confirm that it occurred in 2021, and upon information and belief, The Andersons believe the First Transfer(s) occurred shortly after The Andersons refused to permit Amazing Grains to continue using the Contracts' pricing mechanism and requested that Amazing Grains honor its contracts and deliver 3,000,000 bushels of corn.

74.     Upon information and belief, Amazing Grains made the First Transfer(s) with the actual intent to hinder, delay, or defraud The Andersons. At least the following "badges of fraud" are present:

a. Amazing Grains was or became "insolvent" within the meaning of Neb. Rev. Stat. § 36-803 at the time of the First Transfer(s) or shortly thereafter because the sum of its debts was greater than the sum of its assets.

b. Upon information and belief, Amazing Grains was on notice of a potential suit before the First Transfer(s) occurred.

c. Upon information and belief, the First Transfer(s) was made to "insiders" within the meaning of Neb. Rev. Stat. § 36-802(8).

d. Upon information and belief, Amazing Grains made the First Transfer(s) with the actual intent to hinder, delay, or defraud The Andersons.

e. Amazing Grains did not receive a reasonably equivalent value in exchange for the First Transfer(s).

f. Amazing Grains was engaged in or was about to engage in a business for which Amazing Grains' remaining assets were unreasonably small in relation to the transaction.

g. Upon information and belief, Amazing Grains intended to incur, or believed or reasonably should have believed that it would incur debts beyond Amazing Grains' ability to pay as they became due.

h. The Defendants' ongoing operations indicate that Amazing Grains or Related Parties retained possession or control over the funds that were transferred via the First Transfer(s).

i. Amazing Grains has failed to disclose the true nature of the transaction.

75. Based on a review of Amazing Grains' financial statements, Amazing Grains made the First Transfer(s) without receiving reasonably equivalent value in exchange for the transfer.

Further, based on Amazing Grains' continued operations, Amazing Grains intended to incur, or believed or reasonably should have believed that Amazing Grains would incur debts beyond its ability to pay them as they became due, and it was engaged in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction.

### The Second Transfer

76.     In the year 2022, Amazing Grains' financial statements contain a reference to "an extraordinary item" and record the discharge of $3,896,891 of debt owed to Amazing Grains (the "Second Transfer").

77.     Upon information and belief, the discharge of indebtedness in the amount of $3,896,891 reflects the discharge of a debt owed by a Defendant.

78.     Amazing Grains has refused to disclose the nature of the Second Transfer, and it does not appear to be explained by Amazing Grains' ordinary business operations.

79.     As a result of the Second Transfer, and in combination with a modest net operating profit in 2022, Amazing Grains' capital stock fell further from 2021's negative $1,837,085 to a negative $5,471,883 in 2022.

80.     Amazing Grains' financial statements lack sufficient detail to establish definitively when the Second Transfer occurred. However, Amazing Grains' financial statements confirm that it occurred in 2022, and upon information and belief, Amazing Grains discharged the indebtedness associated with the Second Transfer after The Andersons invoiced Amazing Grains for its failure to perform the Contracts and after The Andersons initiated NGFA Arbitration.

81.     Upon information, belief, and based on a review of Amazing Grains' financial statements, Amazing Grains did not receive reasonably equivalent value in exchange for the discharge of indebtedness.

82.     Amazing Grains was insolvent at the time it discharged the indebtedness owed by the related entity because the sum of Amazing Grains' debts was greater than the sum of Amazing Grains' assets.

83.     Upon information and belief, Amazing Grains made the Second Transfer with the actual intent to hinder, delay, or defraud The Andersons. At least the following "badges of fraud" are present:

a.     Amazing Grains was "insolvent" within the meaning of Neb. Rev. Stat. § 36-803 at the time of the Second Transfer because the sum of its debts was greater than the sum of its assets.

b.     Upon information and belief, Amazing Grains was on notice of a potential suit before the Second Transfer occurred.

c.     Upon information and belief, the Second Transfer was made to "insiders" within the meaning of Neb. Rev. Stat. § 36-802(8).

d.     Upon information and belief, Amazing Grains made the Second Transfer with the actual intent to hinder, delay, or defraud The Andersons.

e.     Amazing Grains did not receive a reasonably equivalent value in exchange for the Second Transfer.

f.     Amazing Grains was engaged in or was about to engage in a business for which Amazing Grains' remaining assets were unreasonably small in relation to the transaction.

g.     Upon information and belief, Amazing Grains intended to incur, or believed or reasonably should have believed that it would incur debts beyond Amazing Grains' ability to pay as they became due.

h.      Upon information and belief, Amazing Grains or its partners retained possession or control over the funds that were transferred via the Second Transfer.

i.      Amazing Grains has failed to disclose the true nature of the transaction.

84.     Based on a review of Amazing Grains' financial statements, Amazing Grains made the Second Transfer without receiving reasonably equivalent value in exchange for the transfer.

85.     Further, based on Amazing Grains' continued operations, Amazing Grains intended to incur, or believed or reasonably should have believed that Amazing Grains would incur, debts beyond its ability to pay them as they became due, and it was engaged in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction.

### The Thedes Are Personally Liable to The Andersons Through the Alter Ego Doctrine or the Piercing the Corporate Veil Doctrine

86.     The Amazing Grains partnership agreement is signed by Jean Thede and Michael Thede as members of their respective limited liability companies JLT Agri and MST Agri.

87.     Michael Thede had previously represented he was a "Partner" of Amazing Grains when he signed the Flex Agreement but is not listed as a Partner on the Amazing Grains partnership agreement.

88.     Amazing Grains and its two partners JLT Agri and MST Agri are primarily operated by Dean Thede, Janet Thede, Michael Thede, and Jean Thede (the "Thedes").

89.     Pursuant to the terms of the Amazing Grains partnership agreement, each of its partners were obligated to contribute their active personal management and active personal labor to the farming operation in order to ensure eligibility for government farm program payments.

90.     U.C.C. financing statements on file with the Nebraska Secretary of State confirm that both Michael Thede and Jean Thede are intimately involved with the day to-day operations of Amazing Grains and viewed by creditors as synonymous with Amazing Grains.

16

91.     Amazing Grains, Jean Thede, and Michael Thede are all listed as debtors in an April 19, 2023 financing statement securing Agrifund, LLC and Wilmington Trust, N.A.

92.     Amazing Grains, Jean Thede, and Michael Thede are all listed as debtors in a separate April 19, 2023 financing statement securing Agrifund, LLC.

93.     Dean Thede, Janet Thede, Michael Thede, and Jean Thede along with the Dean G. Thede Revocable Trust, Thede Power and Equipment, and Thede Trucking have been named on financing statements involving Amazing Grains as far back as December 18, 2018.

94.     Prior U.C.C. filings involving Amazing Grains Family Farm also frequently list Michael and Jean Thede as debtors in addition to Amazing Grains Family Farm.

95.     Each of the Thedes' or Related Entities' presence as debtors on financing statements for Amazing Grains or Amazing Grains Family Farms demonstrates that they have an interest in the collateral subject to the security interest. Neb. Rev. Stat. U.C.C. § 9-102(a)(28) (defining Debtor).

96.     From 2018 through 2020, Amazing Grains' financial statements show that it paid distributions to its partners JLT Agri and MST Agri. These distributions were made from Amazing Grains' net operating income in each of these years.

97.     Amazing Grains' financial statements, as well as those of MST Agri and JLT Agri, show Amazing Grains paid a $46,025.50 distribution to each of its partners, MST Agri and JLT Agri, in 2021 and a $42,500.00 distribution to each of its partners in 2022. These distributions were paid despite Amazing Grains' insolvency in 2021 and 2022.

98.     Financial statements for both MST Agri and JLT Agri show that the entirety of the distributions they received from Amazing Grains in 2021 and 2022 were distributed to their members, which include Michael Thede and Jean Thede.

99.     JLT Agri and MST Agri's financial statements also show that both JLT Agri and MST Agri are undercapitalized, with each holding de minimis assets and, as of year-end 2022, a substantial negative capital account balance of negative $2,742,625.

100.     Based on the long history of financial connections between Amazing Grains, MST Agri, JLT Agri and the Thedes, as well as the undercapitalization and lack of any apparent independent business operations for MST Agri and JLT Agri, and ongoing insolvency of Amazing Grains, Amazing Grains, MST Agri, and JLT Agri are mere facades for the personal dealings of the Thedes, and their operations are carried on by the Thedes in disregard of their independent existence as separate entities.

101.     Essentially, Amazing Grains' financial statements show that the Thedes have created a number of entities, and the Thedes treat those entities as their personal bank, and in doing so, prevent Amazing Grains from honoring its commitments to its creditors.

102.     The Thedes control Amazing Grains to the point that it shows no separate existence of its own.

103.     Upon information and belief, Jean and Michael Thede control JLT Agri and MST Agri to the point that they have no separate corporate interests of their own.

104.     The Thedes exercised their control over Amazing Grains, JLT Agri, and MST Agri to transfer assets with the intention of defrauding their creditors, including The Andersons.

105.     Upon information and belief, the control, management, and financing of Amazing Grains, JLT Agri, MST Agri, and the Thedes are so commingled that following the corporate form would lead to injustice.

106.    Amazing Grains, JLT Agri, and MST Agri are the alter egos of the Thedes, and the corporate veil should be pierced and the Thedes should be held personally liable for all of Amazing Grains, JLT Agri, and MST Agri's actions.

107.    It would be an injustice if the Thedes were able to perpetrate such a fraud to avoid paying The Andersons the amounts due and owing to it, and the Thedes are therefore subject to personal liability for The Andersons' damages as alleged herein.

## COUNT I—FIRST VOIDABLE TRANSFER(S)—AGAINST ALL DEFENDANTS

108.    The Andersons hereby incorporates by reference all other paragraphs in this Complaint as if they were fully set forth herein.

109.    Amazing Grains engaged in the First Transfer(s) with the Related Parties with actual intent to hinder The Andersons' ability to recover its future judgment against Amazing Grains, and such transfer is voidable under Neb. Rev. Stat. § 36-805 for reasons including, but not limited to:

    a.    The Andersons is a "creditor" within the meaning of Neb. Rev. Stat. § 36-802(4) because it has a legal and/or equitable claim to payment from Amazing Grains.

    b.    Amazing Grains is a "debtor" within the meaning of Neb. Rev. Stat. § 36-802(6) because it is liable on a legal and/or equitable claim to The Andersons.

    c.    Amazing Grains was or became "insolvent" within the meaning of Neb. Rev. Stat. § 36-803 at the time of the First Transfer(s) or shortly thereafter because the sum of its debts was greater than the sum of its assets.

    d.    Amazing Grains was on notice of a potential suit before the First Transfer(s) occurred.

    e.      The First Transfer(s) was made to "insiders" within the meaning of Neb. Rev. Stat. § 36-802(8).

    f.      Amazing Grains made the First Transfer(s) with the actual intent to hinder, delay, or defraud The Andersons.

    g.      Amazing Grains did not receive a reasonably equivalent value in exchange for the First Transfer(s).

    h.      Amazing Grains was engaged in or was about to engage in a business for which Amazing Grains' remaining assets were unreasonably small in relation to the transaction.

    i.      Amazing Grains intended to incur, or believed and reasonably should have believed that it would incur, debts beyond Amazing Grains' ability to pay as they became due.

110.    Alternatively, the First Transfer(s) are voidable under Neb. Rev. Stat. § 36-806 for reasons including, but not limited to:

    a.      The Andersons is a "creditor" within the meaning of Neb. Rev. Stat. § 36-802(4) because it has a legal and/or equitable claim to payment from Amazing Grains.

    b.      Amazing Grains is a "debtor" within the meaning of Neb. Rev. Stat. § 36-802(6) because it is liable on a legal and/or equitable claim to The Andersons.

    c.      Amazing Grains was on notice of a potential suit before the First Transfer(s) occurred.

    d.      The First Transfer(s) were made to "insiders" within the meaning of Neb. Rev. Stat. § 36-802(8).

e.     Amazing Grains did not receive reasonably equivalent value in exchange for the First Transfer(s).

f.     The First Transfer(s) caused Amazing Grains to become "insolvent" within the meaning of Neb. Rev. Stat. § 36-803 because the sum of its debts was then greater than the sum of its assets.

111.   Accordingly, the First Transfer(s) are voidable under Nebraska law, and any present or future transfers of like kind will be voidable.

112.   The Andersons requests a declaration from this Court that all transfers of Amazing Grains' assets following July 12, 2022 for less than reasonably equivalent value are void under Nebraska law.

113.   The Andersons further seeks an injunction against Amazing Grains and the Related Parties prohibiting further dispositions of any assets transferred or of other property pursuant to Neb. Rev. Stat. § 36-808(a)(3)(i).

**COUNT II—SECOND VOIDABLE TRANSFER—AGAINST ALL DEFENDANTS**

114.   The Andersons hereby incorporates by reference all other paragraphs in this Complaint as if they were fully set forth herein.

115.   Amazing Grains engaged in the Second Transfer with the Related Parties with actual intent to hinder The Andersons' ability to realize its future judgment against Amazing Grains, and such transfer is voidable under Neb. Rev. Stat. § 36-805 for reasons including, but not limited to:

a.     The Andersons is a "creditor" within the meaning of Neb. Rev. Stat. § 36-802(4) because it has a legal and/or equitable claim to payment from Amazing Grains.

b.    Amazing Grains is a "debtor" within the meaning of Neb. Rev. Stat. § 36-802(6) because it is liable on a legal and/or equitable claim to The Andersons.

c.    Amazing Grains was "insolvent" within the meaning of Neb. Rev. Stat. § 36-803 at the time of the Second Transfer or shortly thereafter because the sum of its debts was greater than the sum of its assets.

d.    Amazing Grains made the Second Transfer after The Andersons initiated arbitration against it.

e.    The Second Transfer was made to "insiders" within the meaning of Neb. Rev. Stat. § 36-802(8).

f.    Amazing Grains made the Second Transfer with the actual intent to hinder, delay, or defraud The Andersons.

g.    Amazing Grains did not receive a reasonably equivalent value in exchange for the Second Transfer.

h.    Amazing Grains was engaged in or was about to engage in a business for which Amazing Grains' remaining assets were unreasonably small in relation to the transaction.

i.    Amazing Grains intended to incur, or believed and reasonably should have believed that it would incur, debts beyond Amazing Grains' ability to pay as they became due.

116.    Alternatively, upon information and belief, the Second Transfer is voidable under Neb. Rev. Stat. § 36-806 for reasons including, but not limited to:

a.    The Andersons is a "creditor" within the meaning of Neb. Rev. Stat. § 36-802(4) because it has a legal and/or equitable claim to payment from Amazing Grains.

22

b.      Amazing Grains is a "debtor" within the meaning of Neb. Rev. Stat. § 36-802(6) because it is liable on a legal and/or equitable claim to The Andersons.

c.      Amazing Grains made the Second Transfer after The Andersons initiated arbitration against it.

d.      The Second Transfer was made to "insiders" within the meaning of Neb. Rev. Stat. § 36-802(8).

e.      Amazing Grains did not receive a reasonably equivalent value in exchange for the Second Transfer.

f.      The Second Transfer caused Amazing Grains to become further "insolvent" within the meaning of Neb. Rev. Stat. § 36-803 because the sum of its debts was then greater than the sum of its assets.

117.    Accordingly, the Second Transfer is voidable under Nebraska law, and any present or future transfers of like kind will be voidable.

118.    The Andersons requests a declaration from this Court that all transfers of Amazing Grains' assets following July 12, 2022 for less than reasonably equivalent value are void under Nebraska law.

119.    The Andersons further seeks an injunction against Amazing Grains and the Related Parties prohibiting further dispositions of any assets transferred or of other property pursuant to Neb. Rev. Stat. § 36-808(a)(3)(i).

## COUNT III—UNJUST ENRICHMENT—AGAINST ALL DEFENDANTS

120.    The Andersons hereby incorporates by reference all other paragraphs in this Complaint as if they were fully set forth herein.

121.    Through the Transfers, Amazing Grains conferred a benefit upon the Related Parties without receiving a reasonably equivalent value in exchange.

122.    The benefits Amazing Grains conferred upon the Related Parties were properly owed to The Andersons.

123.    By doing so, Amazing Grains and the Related Parties have been able to retain a benefit they are not otherwise entitled to retain.

124.    The Related Parties are aware of and have knowingly retained those benefits.

125.    The Related Parties have knowingly profited from Amazing Grains' efforts to hinder The Andersons' ability to satisfy its future judgment against Amazing Grains.

126.    Accordingly, the Related Parties have been unjustly enriched by the Transfers, and it would be inequitable for the Related Parties to retain these benefits under the circumstances.

127.    In the interest of justice and fairness, Amazing Grains and the Related Parties should be required to compensate The Andersons in an amount to be proven at trial, but not less than $5,959,391, together with pre- and post-judgment interest, costs, and fees together with any other relief this Court finds just and equitable under the circumstances.

128.    In the alternative, the Related Parties who currently hold the Transferred Assets, should be required to hold the Transferred Assets in a constructive trust for the benefit of The Andersons.

### COUNT IV—DECLARATORY RELIEF (ALTER EGO LIABILITY)—AGAINST AMAZING GRAINS, JLT AGRI, MST AGRI, DEAN THEDE, JANET THEDE, MICHAEL THEDE, AND JEAN THEDE

129.    The Andersons hereby incorporates by reference all other paragraphs in this Complaint as if they were fully set forth herein.

130.    Dean Thede, Janet Thede, Michael Thede, and Jean Thede directly control Amazing Grains to the point that it has no separate existence of its own.

24

131.    Michael Thede has personally represented himself to be a "Partner" in Amazing Grains despite not being named in the partnership agreement.

132.    JLT Agri and MST Agri are directly controlled by Michael Thede and Jean Thede and have no separate corporate existences of their own.

133.    Amazing Grains is insolvent but continues to incur debt related to its business operations.

134.    Michael Thede and Jean Thede secure the debts associated with Amazing Grains' ongoing business operations.

135.    Dean Thede, Janet Thede, Michael Thede, and Jean Thede have all previously secured the debts incurred by Amazing Grains.

136.    The Dean G. Thede Revocable Trust, Thede Power and Equipment, and Thede Trucking have all previously secured debts incurred by Amazing Grains.

137.    Amazing Grains, JLT Agri and MST Agri are grossly undercapitalized considering the scope of the business operations they engage in.

138.    Amazing Grains, JLT Agri and MST Agri are mere facades for the personal business dealings of Dean Thede, Janet Thede, Michael Thede, and Jean Thede.

139.    The control, management, and financing of Amazing Grains, JLT Agri, and MST Agri, are so commingled with Dean Thede, Janet Thede, Michael Thede, and Jean Thede that following the corporate form would lead to injustice.

140.    The Andersons further seeks a declaration from this Court that Amazing Grains, JLT Agri, and MST Agri are the alter egos of Dean Thede, Janet Thede, Michael Thede, and Jean Thede, and the corporate veil should be pierced and the Thedes should be held personally liable

25

for all of Amazing Grains, JLT Agri, and MST Agri's actions, debts, and liabilities, including any award in favor of The Andersons in the pending arbitration.

## JURY TRIAL DEMAND

The Andersons hereby demands a trial by jury for all issues that may be triable in this action.

## PRAYER FOR RELIEF

WHEREFORE, The Andersons respectfully requests that this Court provide the following relief:

A.    A judgment declaring that the Transfers from Amazing Grains to the Related Parties, totaling at least $5,959,391, are void as to a debt owed to The Andersons pursuant to Neb. Rev. Stat. § 36-808(a)(1);

B.    The attachment of the Transferred Assets as permitted by Neb. Rev. Stat. § 36-808(a)(2);

C.    A judgment declaring that all other transfers of Amazing Grains' assets following July 12, 2022 for less than reasonably equivalent value are void under Nebraska law. Neb. Rev. Stat. § 36-808;

D.    The attachment of any other assets transferred for less than reasonably equivalent value after July 12, 2022, as permitted by Neb. Rev. Stat. § 36-808(a)(2);

E.    A judgment enjoining Amazing Grains and the Related Parties from making further dispositions of any assets transferred or of other property pursuant to Neb. Rev. Stat. § 36-808(a)(3)(i);

F.    A judgment declaring that Dean Thede, Janet Thede, Michael Thede, and Jean Thede are personally liable to The Andersons for the actions of Amazing Grains,

MST Agri and JLT Agri pursuant to the Alter Ego Doctrine or the Piercing the Corporate Veil Doctrine;

G.      A judgment for damages in an amount to be proven at trial, together with reasonable attorneys' fees incurred by The Andersons, pre- and post-judgment interest, and costs against Defendants jointly and severally;

H.      A judgment for restitution or the imposition of a constructive trust for the benefit of The Andersons to prevent the unjust enrichment of Amazing Grains and the Related Parties; and

I.      Any other relief the Court may find just, equitable, and warranted under the circumstances.

Dated: November 6, 2023                    Respectfully submitted,


  /s/Jacob D. Bylund
Jacob D. Bylund (#24859)
jacob.bylund@faegredrinker.com
Joseph R. Quinn (#27970)
joseph.quinn@faegredrinker.com
Robert Gallup
robert.gallup@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Avenue, 33rd Floor
Des Moines, IA  50309
Telephone: (515) 248-9000
Fax: (515) 248-9010

*Attorneys for The Andersons, Inc.*